IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENIFER VAUGHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No.: 19-02314-TH |
| STATE OF DELAWARE DEPARTMENT | ) |
| OF INSURANCE, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **MEMORANDUM OPINION**

Ronald G. Poliquin, THE POLIQUIN FIRM, LLC, Dover, DE – attorney for Plaintiff Jenifer Vaughn

Kathleen Furey McDonough, Carla M. Jones, Jennifer Penberthy Buckley, POTTER ANDERSON & CORROON LLP, Wilmington, DE – attorneys for Defendants the State of Delaware Department of Insurance, Commissioner Trinidad Navarro, and Stuart Snyder

February 11, 2021

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (D.I. 6). For the reasons set forth below, the Court will grant-in-part and deny-in-part Defendants' Motion.

**I.    BACKGROUND**

Plaintiff Jenifer Vaughn filed this action on December 20, 2019, against the State of Delaware Department of Insurance (DOI), Commissioner Trinidad Navarro in his official and individual capacities, Stuart Snyder in his official and individual capacities (collectively, Defendants), and Mitchell Crane[1] in his individual capacity alleging sex discrimination and harassment in violation of Title VII, as well as retaliation in violation of Title VII, the First Amendment, and 42 U.S.C. § 1983.[2]

Ms. Vaughn has been employed by the DOI as its Controller since November 2010. D.I. 6 ¶ 7. For most of the time that Ms. Vaughn has been DOI's Controller, she has also served as DOI's Human Resources Director. *Id.* ¶ 9. Commissioner Navarro was elected in November 2016. *Id.* ¶ 10. In her complaint, as amended on February 13, 2020, Ms. Vaughn alleges that Commissioner Navarro favored employees he deemed loyal and—except for a group of five women seen as loyal—viewed female employees with suspicion. *Id.* ¶¶ 10–15. Ms. Vaughn's complaint describes an alleged campaign of unlawful discrimination undertaken by Defendants against another employee of the DOI, Fleur McKendell. *Id.* ¶¶ 20–32. Ms. McKendell's complaint alleging

---

[1]    Mitchell Crane is not represented by the attorneys who filed the present motion.

[2]    Ms. Vaughn filed Charges of Discrimination in July 2018 and September 2019. D.I. 6 ¶ 5. In September 2019 and January 2020, the Equal Employment Opportunity Commission issued Ms. Vaughn Right to Sue Notices regarding those Charges, which Ms. Vaughn has included as exhibits to her complaint. *Id.* ¶ 6. Defendants do not dispute in the present motion that Ms. Vaughn exhausted her administrative remedies prior to the filing of this action.

unlawful discrimination is also before this Court in a separate case. *See McKendell v. State of Del. Dep't of Ins., et al.*, Case No. 1:19-cv-02063 (D. Del. 2019).

As relevant here, Ms. Vaughn claims that she believed that Ms. McKendell was being singled out for unfavorable treatment and harassment by Defendants because of her race and sex. D.I. 6 ¶¶ 23, 25. Ms. Vaughn eventually received a formal grievance from Ms. McKendell alleging discrimination, harassment, and retaliation. *Id.* ¶ 38. Ms. Vaughn alleges that shortly after she received Ms. McKendell's grievance, Commissioner Navarro visited her office and demanded a copy of the grievance. *Id.* ¶ 42. Ms. Vaughn states that she was unsure as to whether the grievance, which alleged wrongdoing by Commissioner Navarro, *id.* ¶ 40, could properly be shared with Commissioner Navarro and, initially, Ms. Vaughn refused to provide a copy of the grievance until she could consult with State Human Resources. *Id.* ¶ 44. Ms. Vaughn alleges that Commissioner Navarro blocked her office door and refused to leave until she provided a copy of Ms. McKendell's grievance and that she subsequently complied with his demand. *Id.* ¶¶ 45–48. While Ms. Vaughn did not personally conduct the DOI's internal investigation regarding Ms. McKendell's grievance, she alleges in her complaint that she protested the involvement of Deputy Attorney General Jessica Wiley in the processing of the grievance because Ms. McKendell had named Ms. Wiley as a subject of her grievance. *Id.* ¶¶ 49–50.

Ms. Vaughn also claims that in May 2017, she was called into Commissioner Navarro's office to discuss Ms. McKendell's grievance. *Id.* ¶ 73. At that meeting, Ms. Vaughn alleges that Commissioner Navarro asked her: "What side are you on[?] Was [Ms. Vaughn] on his side or [Ms. McKendell]'s side?" *Id.* ¶ 76. Ms. Vaughn states in her complaint that she replied to the effect that she was not taking sides and was promptly excused from the meeting and thereafter forbidden from participating in any other conversations regarding Ms. McKendell. *Id.* ¶¶ 78–79. Ms. Vaughn

additionally claims that she had a social lunch with Ms. McKendell and that afterwards, Mr. Snyder, Commissioner Navarro's Chief of Staff, warned her that the lunch could be a liability. *Id.* ¶¶ 82–85. Finally, Ms. Vaughn alleges that in 2018, Mr. Snyder demanded a copy of Ms. McKendell's file. *Id.* ¶ 107. Again, Ms. Vaughn states in her complaint that she initially refused to provide the file, believing that it was improper since Mr. Snyder was named in Ms. McKendell's grievance, but eventually complied under protest after Mr. Snyder threatened her with disciplinary action. *Id.* ¶¶ 108–09.

The complaint alleges that on January 2, 2018, Ms. Vaughn was called into Mr. Snyder's office to discuss her role as Human Resources Director. D.I. 6 ¶¶ 87–88. Mr. Snyder informed her that the roles of Controller and Human Resources Director were to be divided into separate positions. *Id.* ¶ 90. Mr. Snyder explained that the decision to divide the roles had been made because the Human Resources Director role was to assume more responsibilities and that Ms. Vaughn would be unable to fulfill both roles adequately. *Id.* ¶¶ 91, 94. However, Ms. Vaughn claims that the additional duties Mr. Snyder described were duties that she was already performing and that the duties of the Human Resources Director have remained unchanged. *Id.* ¶ 92. Ms. Vaughn alleges that Mr. Snyder told her that the position would soon be posted and that she was welcome to apply for the new position. *Id.* ¶ 95. However, the new position was assigned a lower paygrade than Ms. Vaughn's current position as Controller, and Ms. Vaughn claims that Defendants were aware that she could not accept reduced pay because she had just purchased a home. *Id.* ¶¶ 96–97.

On August 13, 2018, Mr. Snyder informed Ms. Vaughn that she was suspended pending the results of an investigation into a claim that she had improperly shared her password to a State financial computer program with another DOI employee, Alice Cabana. *Id.* ¶¶ 119–28.

3

Ms. Cabana's complaint alleging retaliation is also before this court in a separate case. *Cabana v. State of Del. Dep't of Ins., et al.*, Case No. 1:20-cv-01138 (D. Del. 2020). Ms. Vaughn remains suspended and claims that she has been unable to obtain employment with other state agencies as a consequence of the pending investigation. *Id.* ¶¶ 134–35.

## II.     LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. During this step, the court must draw all reasonable inferences in favor of the non-moving party but is not required to accept as true "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In essence, the complaint "must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III.  DISCUSSION

### A.  Insufficient Service of Process

Defendants urge that this Court must dismiss Ms. Vaughn's amended complaint for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure because Ms. Vaughn's counsel failed to complete service on the State Solicitor as required under Delaware law and by Rule 4(j)(2)(B) within 90 days after her amended complaint was filed as prescribed by Rule 4(m). But Defendants' argument is not supported by Rule 4(m) and the law governing Rule 12(b)(5) motions in the Third Circuit. Rule 4(m) states that where a defendant has not been served within the 90-day period, "the court . . . must dismiss the action without prejudice against that defendant *or* order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). District courts in the Third Circuit "possess broad discretion" when determining whether to dismiss a plaintiff's complaint for failure to effect service. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). And "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Id.* Since service upon the State Solicitor has now been completed in accordance with state law, Doc. Nos. 15–18, the Court denies Defendant's motion to dismiss for insufficient service of process.

### B.  Failure to State a Claim

As an initial matter, the Court notes that in her response brief in opposition to the present motion, counsel for Ms. Vaughn clarified that Count I of her complaint, D.I. 6 ¶¶ 136–46, is brought under Section 1983 and the First Amendment and lies only against the individual defendants in their individual capacities. D.I. 22 at 32. Counsel for Ms. Vaughn also clarified that Counts II (discrimination and harassment) and III (retaliation) of her complaint, D.I. 6 ¶¶ 147–52, are brought under Title VII and lie only against the DOI and not the individual defendants. D.I. 22

5

at 21, 26. Ms. Vaughn's complaint and the Defendants' motion will be read in accordance with these representations.

### 1. Plaintiff's Section 1983 claim

To state a retaliation claim under the First Amendment and Section 1983, "a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Whether an activity is protected by the First Amendment is a question of law. *Id.* Ms. Vaughn alleges that DOI suspended her employment and removed her human resources duties in retaliation for three activities: investigating Ms. McKendell's claims of discrimination and harassment, D.I. 6 ¶ 137; processing Ms. McKendell's requests for family and medical leave and disability accommodations, *id.* ¶ 138, and having lunch with Ms. McKendell, *id.* ¶¶ 82–86. For the reasons discussed below, the Court concludes that these activities are not protected by the First Amendment.

As a public employee, Ms. Vaughn's speech is protected activity when three conditions are met: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government did not have 'an adequate justification for treating the employee differently from any other members of the general public' as a result of the statement [s]he made." *Hill*, 455 F.3d at 241–42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). A public employee does not speak "as a citizen" when she speaks "pursuant to [her] official duties." *Garcetti*, 547 U.S. at 421; *Hill*, 455 F.3d at 242. As then-Human Resources Director, Ms. Vaughn's involvement in Ms. McKendell's claims of discrimination and requests for leave and accommodations were directly pursuant to her official duties. D.I. 6 ¶ 9 ("Vaughn was directly responsible to assist management with disciplinary actions, approval of Federal Medical Leave

6

Act (FMLA) requests, short term disability, and American with Disabilities Act (ADA) requests."). Ms. Vaughn does not dispute this in her opposition brief. Instead, Ms. Vaughn cites *Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010), in order to show that she states a claim for retaliation under Section 1983. D.I. 22 at 31. But *Hicks* did not involve an alleged violation of First Amendment rights. Rather, the plaintiffs in *Hicks* brought a claim under Section 1983 for alleged violation of the Fourteenth Amendment's Equal Protection Clause. 593 F.3d at 171. Further, the Second Circuit's reading of the Equal Protection Clause to encompass Title VII's anti-retaliation provision in *Hicks* has yet to be followed by any court in the Third Circuit—or, for that matter, any court outside the Second Circuit. This Court declines to be the first to do so.

Finally, Ms. Vaughn argues in her opposition brief that her lunch with Ms. McKendell was not pursuant to her official duties because it occurred "when she was not working" and "was purely a social occasion." D.I. 22 at 32; D.I. 6 ¶ 83. The Court construes Ms. Vaughn's complaint to allege that she was retaliated against for her association with Ms. McKendell. But not all associations are protected by the First Amendment.

> "Rather, the First Amendment guarantees two types of protected associations: '(1) associations founded on intimate human relationships which freedom of association is protected as a fundamental element of liberty, and (2) associations formed for the purpose of engaging in activities protected by the First Amendment, such as the exercise of speech, assembly, and religion.' Mere social relationships, such as those between friends and coworkers, are not protected under the First amendment."

*Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 516 (M.D. Pa. 2014) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1998)), *aff'd Burton v. Pa. State Police*, 612 F. App'x 124, 129 (3d Cir. 2015).

Here, Ms. Vaughn has not alleged that she and Ms. McKendell shared an association closer than friends and coworkers. Nor has Ms. Vaughn alleged that Defendants believed she had lunch with Ms. McKendell to engage in another activity protected by the First Amendment (for example,

7

to organize or discuss matters of public concern)—and indeed she claims that the lunch was for social purposes only. Accordingly, this Court concludes that Ms. Vaughn has not alleged factual matter sufficient to establish that she was engaged in a protected activity when she had lunch with Ms. McKendell. This Court therefore dismisses Ms. Vaughn's Section 1983 retaliation claims for failure to state a claim.

### 2. Plaintiff's Title VII discrimination claim

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. In order to establish a prima facie case of discrimination under Title VII, a plaintiff must allege sufficient factual matter to establish that (1) she was a member of a protected class, (2) she suffered an adverse employment action, and (3) nonmembers of the protected class were treated more favorably. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318–19 (3d Cir. 2000). Title VII also prohibits sexual harassment "that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To state a claim of hostile work environment based on sexual harassment, a plaintiff must allege sufficient facts to establish that (1) she suffered intentional discrimination because of her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person in similar circumstances, and (5) the existence of respondeat superior liability. *Id.*

Ms. Vaughn's complaint fails to state a claim of either sex discrimination or sexual harassment under Title VII because she does not plead any factual matter to give rise to the inference that she was treated unfavorably on the basis of her sex. While Ms. Vaughn alleges

8

several actions which she argues constitute adverse employment actions—including removing her human resources duties and suspending her employment—her complaint is devoid of factual allegations connecting these claimed adverse actions to her sex. In particular, Ms. Vaughn's failure to allege factual matter to show that men were treated more favorably is fatal to her claim of discrimination. *See Golod v. Bank of America Corp.*, 2009 WL 1605309, *3 (D. Del. June 4, 2009) (dismissing claim of discrimination under Title VII where plaintiff "failed to allege a key element—namely, that nonmembers of the protected class were treated more favorably."), *aff'd Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702–03 (3d Cir. 2010). Ms. Vaughn's lone allegation regarding differential treatment based on sex directed toward herself (as opposed to Ms. McKendell) is that, except for a particular group of five women, "all other female employees were viewed with suspicion." D.I. 6 ¶¶ 14–15. But this broad contention is unsupported by any facts and therefore does not meet the *Bell Atlantic v. Twombly*, 550 U.S. 544, 561 (2007), pleading standard. The Court consequently dismisses Ms. Vaughn's claims of discrimination and harassment under Title VII.

### 3. Plaintiff's Title VII retaliation claim

Title VII prohibits retaliation against an employee because she "opposed" any practice made unlawful under Title VII (the opposition clause) or "participated in any manner in an investigation, proceeding, or hearing under" Title VII (the participation clause). 42 U.S.C. § 2000e-3. To state a claim of retaliation sufficient to withstand a motion to dismiss, a plaintiff must plead sufficient factual allegations to show that (1) she engaged in conduct protected by Title VII, (2) her employer took adverse action against her, and (3) there is a causal link between her protected conduct and the adverse action. *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). Defendants argue that Ms. Vaughn's complaint fails to establish all three elements. For the

9

reasons discussed below, the Court disagrees and denies Defendants' motion to dismiss Ms. Vaughn's Title VII retaliation claim.

### a. Protected conduct

First, the Court notes that under either the opposition clause or the participation clause, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). Ms. Vaughn's allegations that Ms. McKendell was being treated unfavorably and subjected to harassment, D.I. 6 ¶¶ 20–25, and her allegations that she believed that Ms. McKendell was being singled out for such treatment based on her race and sex, *id.* ¶¶ 23, 25, are enough to satisfy this requirement. Next, Ms. Vaughn has alleged factual matter to show that she opposed this perceived unlawful activity. She claims that she resisted providing Commissioner Navarro with a copy of Ms. McKendell's grievance alleging discrimination because she believed it improper to provide the grievance to a named subject of the grievance. *Id.* ¶ 44. Similarly, Ms. Vaughn alleges that she resisted providing Mr. Snyder with Ms. McKendell's file because he was also named in her grievance. *Id.* ¶¶ 107–09. Ms. Vaughn also alleges that, although she did not perform the internal investigation into that grievance, she expressed her opposition to the involvement in that investigation of a state attorney who was also named in the grievance. *Id.* ¶¶ 49–50. These allegations support a reasonable inference that Ms. Vaughn resisted these actions by Defendants because she believed that they were acts of unlawful discrimination against Ms. McKendell.

Defendants nonetheless argue that these actions cannot fall under either the opposition clause or the participation clause. In support of that contention, Defendants advance a narrow interpretation of the opposition clause which protects only affirmative expressions of opposition and a narrow interpretation of the participation clause which excludes participation in internal

10

investigations, even those that lead to a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). D.I. 12 at 17–19.

As to the opposition clause, Defendants' interpretation does not comport with the leading Supreme Court decision on this subject, *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009). The plaintiff in *Crawford* claimed that she was terminated in retaliation for answering questions during an internal investigation into whether a superior had engaged in sexual harassment against another employee. *Id.* at 274. The Supreme Court considered whether that allegation constituted unlawful retaliation under Title VII and the Court concluded that her statement to the investigating officer was "covered by the opposition clause." *Id.* at 276. In so holding, the Supreme Court noted that "'we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Id.* at 277. The Court finds that Ms. Vaughn's factual allegations, and the reasonable inferences drawn therefrom, satisfy the Supreme Court's elaboration of the opposition clause in *Crawford*.

Additionally, the Third Circuit requires that for an action to be covered by the opposition clause, such opposition "must identify the employer and the practice—if not specifically, at least by context." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995)). "When deciding whether a plaintiff has engaged in opposition conduct, we look to the message being conveyed . . . ." *Id.* But, "there is no hard and fast rule as to whether the conduct in a given case is protected." *Id.* Here, we find that Ms. Vaughn has alleged sufficient facts to show that she identified her opposition to unlawful discrimination against Ms. McKendell by the context of Ms. Vaughn's actions. Each of her alleged acts of opposition occurred in the context of supporting

11

Ms. McKendell's grievance complaining of discrimination. Even more, Ms. Vaughn alleges that—following at least some of her acts of opposition—Commissioner Navarro directly confronted her about Ms. McKendell, asking Ms. Vaughn if she was "on his side or [Ms. McKendell]'s side?" D.I. 6 ¶ 76. To which Ms. Vaughn claims that she responded that she was "only trying to do the right thing." *Id.* at ¶ 78. The Court thus concludes that Ms. Vaughn has alleged sufficient factual matter to show that she opposed an unlawful practice under Title VII.

As to the participation clause, Defendants cite only out-of-circuit support for the proposition that the participation clause does not encompass participating in an internal investigation connected to an EEOC charge. To the best of this Court's knowledge, the Third Circuit has yet to determine whether the participation clause encompasses an internal investigation connected to an EEOC charge. Because the Court finds that Ms. Vaughn's complaint shows that she opposed an unlawful practice under Title VII, at this stage, the Court declines to reach the question of whether Ms. Vaughn's claims also establish that she participated in an investigation under Title VII.

### b. Adverse employment action

Defendants argue that Ms. Vaughn has failed to allege that she suffered any adverse employment action. This Court concludes that Ms. Vaughn has alleged at least two employment actions that, together or individually, could be severe enough to constitute adverse employment action under Title VII and accordingly warrant evidentiary development: suspension and removal of her duties as Human Resources Director.[3]

---

[3] The Court notes that Ms. Vaughn represents in her opposition brief that her employment with DOI has been terminated, but this allegation is not in her amended complaint.

In the context of Title VII's anti-retaliation provision, "acts of retaliation qualify as adverse employment actions if they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Remp v. Alcon Labs., Inc.*, 701 F. App'x. 103, 107 (3d Cir. 2017) (quoting *Moore*, 461 F.3d at 341). What constitutes adverse employment action under Title VII's anti-retaliation provision is broader than what constitutes the same in the discrimination context. For example, in *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 325 (3d Cir. 2015), the Third Circuit held that suspension with full pay, without more, typically does not constitute adverse employment action in the discrimination context, but expressly declined to decide whether the same constitutes an adverse action in the retaliation context. Even assuming that Ms. Vaughn's suspension was fully paid, the Court cannot hold as a matter of law that such paid suspension would not dissuade a reasonable worker from supporting a charge of discrimination. *See Hinkle v. City of Wilmington*, 205 F. Supp. 3d 558, 574–75 (D. Del. 2016) (collecting cases and denying defendant's motion for summary judgment where plaintiff was suspended with pay). Even more, unlike in *Jones*, Ms. Vaughn has also alleged substantial changes to her responsibilities as Controller. A significant change in duties, even without a reduction in pay, can constitute adverse employment action under Title VII. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999) (holding that transfer of the plaintiff teacher to a school with a reputation of being difficult and which resulted in him being unable to teach physics, which he sought to teach, constituted adverse employment action in Title VII substantive discrimination context). Accordingly, the Court finds that Ms. Vaughn has pled sufficient factual matter to show that she suffered an adverse employment action.

### c. Causal connection

Finally, Defendants argue that Ms. Vaughn's complaint fails to connect any adverse action to her alleged protected activities. The Court disagrees. In particular, the removal of Ms. Vaughn's human resources responsibilities is particularly suggestive of retaliation given that her alleged opposition was intertwined with her role as Human Resources Director. The Court therefore finds that Ms. Vaughn's allegations raise the reasonable expectation that discovery will reveal the existence of a causal connection between her alleged opposition to unlawful activities and the alleged adverse employment actions.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Ms. Vaughn's complaint as to Counts I and II and denies the motion to dismiss as to Count III. An appropriate order will follow.