IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENIFER VAUGHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No.: 19-02314-TMH |
| STATE OF DELAWARE DEPARTMENT OF INSURANCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

MEMORANDUM OPINION

Ronald G. Poliquin, THE POLIQUIN FIRM, LLC, Dover, DE – attorney for Plaintiff Jenifer Vaughn

Kathleen Furey McDonough, Carla M. Jones, Jennifer Penberthy Buckley, POTTER ANDERSON & CORROON LLP, Wilmington, DE – attorneys for Defendant State of Delaware Department of Insurance

July 1, 2022
Wilmington, Delaware

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before me is Plaintiff Jenifer Vaughn's motion to file a Second Amended Complaint, ECF No. 127. Ms. Vaughn's First Amended Complaint alleges that her former employer, Delaware Department of Insurance (DOI), violated Title VII by demoting and suspending her in retaliation for the role she played in an investigation of grievances filed by her then-fellow employee, Fleur McKendell. In her proposed Second Amended Complaint, Ms. Vaughn alleges she was also terminated in retaliation for her role in the investigation. The motion to amend comes nearly two years after Ms. Vaughn was terminated and just over a year after the deadline to amend in the scheduling order. Because DOI has not shown the delayed amendment would be futile or unduly prejudicial, and Ms. Vaughn has shown good cause to deviate from the scheduling order, I grant the motion.

**I.   Legal Standard**

Under Federal Rule of Civil Procedure 15(a), "the court should freely give leave [to amend] when justice so requires." But if, as here, "a party moves to amend . . . after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) . . . [also] applies." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

**II.   Leave to Amend Under Rule 15**

"[T]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (quoting

2

*Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). "Among the [other] factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz*, 1 F.3d at 1414). DOI argues that the amendment would be futile and that Ms. Vaughn's delay is undue and prejudicial. Def.'s Answering Br., at 5–10, ECF No. 125.

### A. Futility due to Failure to Exhaust

DOI argues Ms. Vaughn's proposed amendment is futile because Ms. Vaughn did not exhaust administrative remedies for her termination. Def.'s Answering Br., at 7–9. Ms. Vaughn responds that her suspension and termination were closely related, so her EEOC charge related to her suspension satisfies the exhaustion requirement for her termination. Pl.'s Opening Br., at 5–8, ECF No. 124.

DOI suspended Ms. Vaughn from her position as Controller in August 2019. *Id.* Ex. 2. According to a memo signed by Chief of Staff Stuart Snyder, Ms. Vaughn was suspended for allegedly "shar[ing] [her] First State Financial [FSF] log in credentials with another employee." *Id.* The memo explained that this was a rule violation that could lead to her "being locked out of the [FSF] system" and thus "unable to perform core functions of [her] job." *Id.* Indeed, Ms. Vaughn's access to FSF was suspended. *See* Answer ¶ 127, ECF No. 29.

Following Ms. Vaughn's suspension, DOI investigated her compliance with various state policies. Pl.'s Opening Br. Ex. 5, at 1. It found several purported violations—including sharing FSF log in credentials—which it described in a February 2020 letter signed by Mr. Snyder. *Id.* Nearly a year after suspending her,

3

DOI terminated Ms. Vaughn, effective July 17, 2020. *Id.* Ex. 4. DOI's notice of termination incorporated by reference a list of eleven reasons for her termination and emphasized that "access to the FSF[] system is essential for the person serving in the position of Controller." *Id.* at 1. In this litigation, DOI discloses the same individuals, Mr. Snyder and HR Specialist Elizabeth Morgan, as knowledgeable about Ms. Vaughn's suspension and her termination. Pl.'s Reply Br. Ex. J, at 4, ECF No. 128.

Ms. Vaughn has filed two charges with the Equal Employment Opportunity Commission (EEOC). She filed the second shortly after her suspension, alleging that "she was suspended from work" and that DOI's purported reasons for the suspension "were pretense to discipline her in retaliation for being previously engaged in a protected activity." Pl.'s Opening Br. Ex. 3, at 1. The EEOC's proceedings concluded when it issued its notice of right to sue on the second charge in January 2020, before Ms. Vaughn was terminated. Am. Compl. Ex. 2, ECF No. 6. The deadline to file a new charge alleging termination has passed.[1]

An amendment is futile if it only adds allegations that a plaintiff is barred from raising for her failure to exhaust administrative remedies. *See Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 719–20 (D. Del. 2008) (denying leave to amend because it would be futile to add a hostile work environment claim that was not exhausted);

---

[1] *Riley v. Del. River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006) ("A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC.").

*Chiesi USA, Inc. v. Aurobindo Pharma USA, Inc.*, No. 19-18756, 2022 WL 304574, at *3 (D.N.J. Jan. 9, 2022) (granting motion in limine to exclude theories outside of the pleadings).

An EEOC charge can satisfy the exhaustion requirement for acts occurring after the charge is filed if "the acts . . . are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). The court must "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." *Id.* (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997)). The court evaluates "the scope of the EEOC investigation that would reasonably grow out of, or arise from, the initial charge filed with the EEOC, 'irrespective of the actual content of the Commission's investigation.'" *Id.* at 208–09 (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)). So the court "must compare the two sets of allegations and evaluate whether they are sufficiently related such that a reasonable investigation of the original charge would address the subsequent, unexhausted claims." *Id.* at 210–11. "In comparing the two sets of allegations, [the court] looks for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue." *Id.* at 211.

DOI argues that the EEOC must have an actual opportunity to investigate the specific instance of post-charge conduct in question, Def.'s Answering Br. 8, meaning

an EEOC charge cannot satisfy the exhaustion requirement for actions taken after the EEOC issues its notice of right to sue.

The Third Circuit has not issued a precedential opinion addressing exhaustion requirements for acts occurring after the EEOC concludes its investigation. *See Fogarty v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, No. 2:19-CV-173-MJH, 2019 WL 5310661, at *5 (W.D. Pa. Oct. 21, 2019); *cf. Waiters*, 729 F.2d at 237 (noting that past cases involved "new acts that occur during the pendency of the case"). *Simko* does not distinguish between events that take place during the EEOC investigation and after it concludes, nor does *Simko* require that an event occur during the EEOC investigation to be exhausted. *See* 992 F.3d at 208–09 (considering "the scope of the EEOC investigation that would reasonably grow out of, or arise from, the initial charge filed with the EEOC, 'irrespective of the actual content of the Commission's investigation'" (quoting *Hicks*, 572 F.2d at 966)). Rather, *Simko* and prior cases show that the Third Circuit's approach to exhaustion is generous to plaintiffs, allowing them to satisfy the exhaustion requirement without showing that the EEOC actually investigated post-charge conduct. *Id. Waiters*' rationale for not requiring separate exhaustion was that "once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed." 729 F.2d at 237. This rationale applies equally to retaliatory acts after the EEOC investigation closes, provided they are sufficiently related to allegations in the EEOC charge.

In a non-precedential opinion, the Third Circuit considered exhaustion for an event that occurred after the plaintiff received her notice of right to sue from the Postal Service's Equal Employment Opportunity (EEO) office. *Green v. Postmaster Gen.*, 437 F. App'x 174 (3d Cir. 2011). The plaintiff had filed an EEO complaint "claiming that she had been discriminated against on account of her race and gender in violation of Title VII" when the Postal Service did not promote her to a particular management position. *Id.* at 176. After the plaintiff received her notice of right to sue and then sued in district court, the Postal Service transferred her to another facility, alleging this move was necessary to separate her from her daughter working in the same facility. *Id.* The plaintiff alleged in district court that the transfer was the result of race and gender discrimination. *Id.* The Third Circuit held that the plaintiff did not exhaust her claim related to the transfer under the *Waiters* standard, explaining that the transfer was "a discrete act that occurred after [the plaintiff] had received her right-to-sue letter from the EEO on her earlier claim." *Id.* at 178 (citing *Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir. 2005)).

I do not read *Green* as establishing a general rule that an EEOC investigation ending before a discrete employment act takes place cannot satisfy the exhaustion requirement for that act. Particularly not in view of the rationale in *Waiters* or in view of *Simko*'s requirement of case-by-case consideration. *Waiters*, 729 F.2d at 237; *Simko*, 992 F.3d at 207, *see also Duplan v. City of New York*, 888 F.3d 612, 623 (2d Cir. 2018) (collecting Second Circuit cases excusing the exhaustion requirement for retaliatory acts after the close of the EEOC's investigation, as long as the acts are

7

"reasonably related" to the EEOC charge). *Simko* suggests that whether two acts are "discrete" employment acts in the formal sense, as discussed in *Parisi* and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)[2], is a consideration under the court's broader inquiry into whether two acts have a factual nexus making them "sufficiently related." *See Simko*, 992 F.3d at 211–12 (acknowledging that "[t]he original EEOC charge and Simko's civil complaint thus address discrete adverse employment actions" but continuing to discuss the factual nexus between them). This explains the Third Circuit's reliance on the "discrete acts" categorization in *Green*. And beyond being discrete employment acts, the failure to promote and transfer in *Green* had other factual dissimilarities that further justify finding the transfer not exhausted in that case: The two acts involved different individuals, and the Postal Service alleged entirely different reasons for the two acts. *Green v. Potter*, 687 F. Supp. 2d 502, 507–09 (D.N.J. 2009), *aff'd, Green*, 437 F. App'x 174.

Ms. Vaughn's termination allegation is closely related to her suspension allegation in the EEOC charge, and for that reason *Green* is distinguishable. Ms. Vaughn alleges the termination and suspension were both retaliatory acts for the same protected activity. The termination occurred during the suspension, and Mr. Snyder was involved with both decisions. The issues of FSF access that DOI

---

[2] Suspension and termination are generally "discrete" adverse employment acts. *Morgan*, 536 U.S. at 114–15 (observing that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and then listing the discrete acts in the case before it, including wrongful suspension); *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

8

discussed in its notice of termination were also the subject of its notice of suspension. DOI does not dispute the similarities except to note that the facts are not "identical" because DOI gave additional reasons for Ms. Vaughn's termination. Def.'s Answering Br. 9. Identical facts are not required. Similarly, in *Hickey v. Nielson*, the district court found a plaintiff's wrongful termination claim exhausted where the plaintiff was on medical leave for her mental health conditions before filing the EEOC complaint and received disability retirement for her mental health conditions after the EEOC issued a notice of right to sue, explaining that each cause of action "is rooted in the same factual nexus" and accrued when the plaintiff's "mental health deteriorated to the point where she was no longer able to perform the essential functions of a Federal Air Marshal[]." No. CV 17-12660, 2018 WL 4005747, at *3 (D.N.J. Aug. 22, 2018). Ms. Vaughn's suspension and termination are "sufficiently related such that a reasonable investigation of the original charge would address" termination. *Simko,* 992 F.3d at 210–11; *see also Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (ruling that there was no exhaustion problem because "disciplinary action" and "termination" as retaliation for the same activity are similar enough under the Second Circuit's exhaustion exceptions).

Because the factual similarities between Ms. Vaughn's suspension and termination allegations are adequate to allow her earlier EEOC complaint to serve the purposes of exhaustion for her termination, the exhaustion requirement does not

bar Ms. Vaughn from raising her termination. It would therefore not be futile for Ms. Vaughn to amend her complaint to include termination allegations.

### B. Prejudice and Undue Delay

DOI argues the delay prejudices it because "[n]ow that discovery has closed, DOI can no longer gather evidence that it would have gathered had Plaintiff timely alleged a claim based on the termination of her employment." Def.'s Answering Br. 10. To mitigate this prejudice, DOI asks to at least "(1) retake the Plaintiff's deposition; and (2) subpoena documents and deposition testimony of non-party witnesses who investigated and identified wrongdoing by Plaintiff that contributed to the termination decision." *Id.* n.9.

"Delay alone is not sufficient to justify denial of leave to amend." *Arthur*, 434 F.3d at 204. Indeed, the Third Circuit has explained that delay of nearly a year is not "so excessive as to be presumptively unreasonable," and appellate courts have affirmed grants of leave to amend following much longer delays. *Id.* at 205 (collecting cases). "However, at some point, delay will become undue, placing an unwarranted burden on the court and an unfair burden on the opposing party." *Id.* at 204 (cleaned up). "In order to prove undue prejudice, the non-movant 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered . . . had the amendments been timely.'" *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 578 (D. Del. 2009) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)) (alterations in original).

I will permit additional discovery. I am aware of the expense associated with discovery, but the amount of discovery required is modest because of the close factual relationship between Ms. Vaughn's suspension and termination. DOI has not shown that, with more discovery, it will still be deprived of the opportunity to present any facts or evidence.

### III. Good Cause to Deviate from the Scheduling Order under Rule 16

Ms. Vaughn argues that good cause exists because she believed that her First Amended Complaint already encompassed her termination, so no amendment was necessary. Pl.'s Reply Br. 5. She characterizes the termination as "an extension of her suspension covered under Count II Retaliation regarding unlawful retaliation." *Id*.

"'Good cause' exists if the [s]chedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 371–72 (D. Del. 2018), *aff'd*, 845 F. App'x 170 (3d Cir. 2021) (quoting Fed. R. Civ. P. 16(b)(4), Advisory Committee Notes to the 1983 Amendments).

Ms. Vaughn has not been diligent. She did not amend in the year from the time she was terminated to the deadline in the scheduling order, nor did she move to amend in the year following the deadline in the scheduling order. This despite the court notifying Ms. Vaughn that she had not alleged the termination in her complaint, Mem. Op., at 12 n.3, ECF No. 26, and DOI repeatedly indicating that it understood the termination to be outside the scope of the complaint and discovery, Defs.' Reply in Supp. of Mot. to Dismiss, at 8, ECF No. 25; *see* Def.'s Answering Br. Ex. A ¶ 5 & n.2, Ex. B (stating that DOI would limit its discovery responses to the

11

period from "January 1, 2017 through February 13, 2020"); *but see* Pl.'s Reply Br. Ex. A 42:9–24, 45:15–17, 207:19–22, Ex. C. 331:5–333:14, Ex. J, at 5 (DOI raising termination in discovery).

But it was not entirely unreasonable for Ms. Vaughn to believe her termination was an additional fact supporting her existing claim rather than a separate theory requiring an amended complaint.[3] And Ms. Vaughn's behavior in this litigation is consistent with that belief. Ms. Vaughn has continually asserted that her termination was a part of this litigation. Pl.'s Answering Br. to Def.'s Mot. Summ. J., at 17, ECF No. 92; *see* Pl.'s Answering Br. to Defs.' Mot. to Dismiss, at 17, ECF No. 22 (mentioning termination); Pl.'s Reply Br. Ex. D 337:7–12 (Ms. Vaughn raising termination in discovery). The court's footnote mentioning that the termination was not pled would not lead Ms. Vaughn to amend the complaint if she believed she was not required to specifically plead it. And Ms. Vaughn maintains she does not need more discovery on the reasons for termination, which explains why she did not amend or object when DOI indicated that it did not believe post-filing events to be part of discovery.

I do not lightly excuse Ms. Vaughn's lack of diligence. Even so, I credit her account of why she did not amend earlier. Good cause supports her request to deviate from the scheduling order's deadline to amend.

---

[3] *See generally Chiesi*, 2022 WL 304574, at *3 (distinguishing between new facts that support allegations in the complaint and new theories not in the complaint, and finding that the defendant was raising new theories by alleging "new and different instances of purported misconduct rather than buttressing the instances pled").

12

13

\*   \*   \*

For the foregoing reasons, I grant Ms. Vaughn's motion to file a second amended complaint. An appropriate order will follow.